## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CITY OF PENSACOLA,<br>A FLORIDA MUNICIPAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY (f/k/a Minnesota Mining and Manufacturing Co.); E. I. DUPONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT DE NEMOURS, INC.; CORTEVA, INC.; CHEMGUARD, INC.; TYCO FIRE PRODUCTS LP; JOHNSON CONTROLS INTERNATIONAL, PLC; KIDDE-FENWAL, INC.; KIDDE PLC, INC.; CHUBB FIRE & SECURITY, LTD.; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; UNITED TECHNOLOGIES CORPORATION; CHUBB FIRE, LTD.; NATIONAL FOAM, INC.; ANGUS FIRE ARMOUR CORPORATION; ANGUS INTERNATIONAL SAFETY GROUP; BUCKEYE FIRE EQUIPMENT COMPANY; ARKEMA, INC.; ARKEMA FRANCE, SA; BASF CORPORATION; CHEMDESIGN PRODUCTS, INC.; DYNAX CORPORATION; CLARIANT CORPORATION; ELÉ CORPORATION; CHEMICALS INCORPORATED; NARCHEM CORPORATION; NATION FORD CHEMICAL COMPANY; AGC CHEMICALS AMERICAS INC.; DEEPWATER CHEMICALS INC; ARCHROMA MANAGEMENT LLC; DAIKIN AMERICA, INC.; DAIKIN INDUSTRIES LTD.; SOLVAY SPECIALTY POLYMERS USA, LLC; NORTH AMERICA FIRE EQUIPMENT COMPANY, INC.; AND JOHN DOE DEFENDANTS 1-49,<br><br>Defendants. | MDL No.: 2873<br><br>Master Docket No.: 2:18-mn-2873<br><br>JUDGE RICHARD GERGEL<br><br>Civil Case No.: 2:20-cv-1478-RMG<br><br>DIRECT FILED COMPLAINT AND JURY DEMAND PURSUANT TO CASE MANAGEMENT ORDER NO. 3 |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, City of Pensacola ("Plaintiff" or "City"), by and through its undersigned counsel, brings this action against Defendants, 3M Company, E. I. DuPont De Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours,

Inc., Corteva, Inc., Chemguard, Inc., Tyco Fire Products LP (successor-in-interest to The Ansul Company), Johnson Controls International, plc, Kidde-Fenwal, Inc., Kidde PLC, Inc., Chubb Fire & Security, Ltd., UTC Fire & Security Americas Corporation, Inc., United Technologies Corporation, Chubb Fire, Ltd., National Foam, Inc., Angus Fire Armour Corporation, Angus International Safety Group, Ltd., Buckeye Fire Equipment Company, Arkema, Inc., Arkema France, SA, BASF Corporation, ChemDesign Products, Inc., Dynax Corporation, Clariant Corporation, Elé Corporation, Chemicals Incorporated, Narchem Corporation, Nation Ford Chemical Company, AGC Chemicals Americas, Inc., Deepwater Chemicals, Inc., Archroma Management, LLC, Daikin America, Inc., Daikin Industries, Ltd., Solvay Specialty Polymers USA, LLC, North America Fire Equipment Company, Inc., and John Doe Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

## SUMMARY OF THE CASE

1.      Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, treatment, remediation, removal, disposal, and monitoring of the ongoing contamination of its surface water, groundwater, soil and sediment caused and/or created by Defendants' products; diminished property value; as well as any and all other damages available as a result of the actions and/or inactions of Defendants.

2.      Plaintiff is a municipal corporation located in Escambia County, Florida.

3.      Plaintiff is the owner and operator of the Pensacola International Airport and the Pensacola Fire Department.  The Pensacola Fire Department operates out of six fire stations.  A fire training facility is located at the Pensacola Fire Department's Station No. 4.  Aircraft rescue and firefighting services for Pensacola International Airport are provided by the Pensacola Fire Department. All of the City of Pensacola's affected property interests, including but not limited

to the aforementioned airport and fire stations, will be referred to collectively in this Complaint as "Plaintiff's Property."

4.    At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonic acid ("PFOS"), the chemical precursors of PFOA and/or PFOS, and/or aqueous film-forming foam ("AFFF") containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products").

5.    AFFF is a firefighting agent used to control and extinguish Class B fuel fires and is used at sites such as military bases, airports, petroleum refineries, and fire training centers.

6.    PFOA and PFOS are man-made compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

7.    Defendants designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by the Defendants.

8.    Upon information and belief, at all times pertinent herein, Defendants' Fluorosurfactant Products have been released, used, stored, and/or disposed of at and/or in the vicinity of Plaintiff's Property for fire protection, training, and response activities.  During these activities, Defendants' Fluorosurfactant Products were stored, used, cleaned up, and/or disposed of as directed and intended by the Defendants, which allowed PFOS, PFOA, and/or their chemical precursors to enter the environment, and migrate through the soil, sediment, surface water, and groundwater, thereby contaminating Plaintiff's Property.

9.      As a result of the use of Defendants' Fluorosurfactant Products for their intended purpose, PFOS, PFOA, and/or their chemical precursors have been detected in the soil, sediment, surface water, and/or groundwater of Plaintiff's Property at substantial levels.

10.     Plaintiff's Property has been, and continues to be, contaminated by Defendants' Fluorosurfactant Products.

11.     At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of its Property through the use, release, storage, and/or disposal of Defendants' Fluorosurfactant Products as Defendants did not disclose the toxic nature and harmful effects of these Fluorosurfactant Products.

12.     Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, treat, remediate, remove, dispose of, and monitor the PFOS and PFOA contamination of Plaintiff's Property caused by the use of Defendants' Fluorosurfactant Products on Plaintiff's Property, as well as any and all other damages recoverable under Florida and/or applicable federal laws.  Plaintiff also seeks damages and restitution for the diminution of value of Plaintiff's Property, punitive damages, reasonable attorneys' fees and costs necessitated by the securing of counsel to file this action, and all other relief that this Court deems fair and equitable.

## PARTIES

13.     Plaintiff City of Pensacola is a municipal corporation, created pursuant to the laws of the State of Florida, with its principal address at 222 West Main Street, Pensacola, Florida 32502.

14.     Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property:

4

a.  Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a Delaware corporation authorized to conduct business in Florida, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. 3M is the only company that manufactured and/or sold AFFF containing PFOS.

b.  Defendant E. I. DuPont De Nemours and Company ("DuPont") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.  DuPont is registered to do business in the State of Florida.

c.  Defendant The Chemours Company ("Chemours") is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899. Chemours is registered to do business in the State of Florida.

d.  In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorosurfactants and the products that contain fluorosurfactants.

e.  Defendant The Chemours Company FC, LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware corporation with its principal place of business located at 1007 Market Street Wilmington, Delaware, 19899. Chemours FC is registered to do business in the State of Florida.

f.  Defendant DuPont de Nemours, Inc. is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. Upon information and belief, DowDuPont, Inc. was formed in 2017 and had two subsidiaries, The Dow Chemical Company and E. I. DuPont de Nemours and Company. In an attempt to restructure, DowDuPont, Inc. was subsequently divided into three publicly traded companies, and on June 1, 2019, DowDuPont, Inc. changed its registered name to DuPont de Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont has assumed some of the PFAS liabilities of the former DuPont.

g.  Defendant Corteva, Inc. is a Delaware Corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. Upon information and belief, Corteva, Inc. is one of the aforementioned spin-off companies from DowDuPont, Inc., and is believed to have assumed some of the PFAS liabilities of the former DuPont.

h.  Defendant Chemguard, Inc. ("Chemguard") is a Texas corporation with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, Chemguard does and/or has done business throughout the United States, including Florida.

i.  Defendant Tyco Fire Products LP ("Tyco") is a Delaware limited partnership with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.  Tyco acquired Chemguard in 2011.  Tyco is a subsidiary of Johnson Controls International, plc, an Irish public limited company.

j.  Tyco is the successor-in-interest to The Ansul Company ("Ansul") and manufactures the Ansul brand of products (Ansul and/or Tyco as the successor-in-

interest to Ansul will be referred to collectively as "Tyco/Ansul"). Upon information and belief, Tyco/Ansul does and/or has done business throughout the United States, including in the State of Florida.

k.  Defendant Johnson Controls International, plc ("JCI plc") is an Irish public limited company with its principal place of business located at One Albert Quay, Cork, Ireland T12 X8N6.

l.  Defendant Kidde-Fenwal, Inc. ("Kidde") is a Delaware corporation with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Kidde/Kidde Fire is registered to do business in Florida.

m.  Defendant Kidde PLC, Inc. is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Kidde PLC, Inc. is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation. Upon information and belief, Kidde PLC, Inc. does and/or has done business throughout the United States, including in the State of Florida.Defendant Chubb Fire & Security, Ltd. ("Chubb") is a foreign private limited company, United Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United

Technologies Corporation.  Upon information and belief, Chubb has and/or has done business throughout the United States, including in the State of Florida.

n.  Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092.  UTC is registered to do business in Florida.  UTC is a subsidiary of United Technologies Corporation.

o.  Defendant United Technologies Corporation ("United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032. United Tech is registered to do business in Florida.

p.  Defendant Chubb Fire, Ltd. is a foreign private limited company, United Kingdom registration number 00134210, with its registered business offices located at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ.

q.  Defendant National Foam, Inc. ("NF") is a Delaware corporation with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. NF is part of Angus International Safety Group.  Upon information and belief, NF does and/or has done business throughout the United States, including in the State of Florida.

r.  Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with its principal offices at 141 Junny Road, Angier, North Carolina 27501. Angus Fire is part of Angus International Safety Group. Upon information and belief, Angus Fire does and/or has done business throughout the United States, including in the State of Florida.

s.   Defendant Angus International Safety Group, Ltd. ("Angus") is a foreign private limited company, United Kingdom registration number 8441763, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom LA2 7NA.

t.   Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.  Upon information and belief, Buckeye does and/or has done business throughout the United States, including in the State of Florida.

u.   Defendant Arkema, Inc. is a Pennsylvania corporation with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema is registered to do business in Florida. Upon information and belief, Arkema, Inc. is the operating U.S. subsidiary of Arkema France, SA.

v.   Defendant Arkema France, SA is a foreign company registered in France with registered business offices located at 420 Rue d'Estienne d'Orves, 92705 Colombes Cedex, France. Upon information and belief, Arkema France, SA is the parent company of Arkema, Inc.

w.   Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.  BASF is registered to do business in Florida.  Upon information and belief, Ciba-Geigy Corporation and/or Ciba Specialty Chemicals does and/or has done business throughout the United States, including Florida.

x.   Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

9

y.  Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured fluorosurfactants for use in AFFF.

z.  Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant is registered to do business in Florida.

aa. Defendant Elé Corporation ("Elé") is an Illinois corporation with its principal place of business located at 7847 West 47th Street, McCook, Illinois 60525.

bb. Defendant Chemicals Incorporated is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521. Upon information and belief, Chemicals Inc. is registered to do business in Florida.

cc. Defendant Narchem Corporation ("Narchem") is an Illinois corporation with its principal place of business located at 2519 Pan Am Blvd., Elk Grove Village, Illinois, 60007.

dd. Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

ee. Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. AGC is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd. Upon information and belief, AGC does and/or has done business throughout the United States, including in the State of Florida.

ff.  Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal business office at 196122 E County Road 40, Woodward, Oklahoma 73801. Upon information and belief, this Defendant manufactured fluorosurfactants for use in AFFF.

gg. Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

hh. Defendant Daikin America, Inc. is a Delaware corporation with its principal place of business located at 20 Olympic Drive, Orangeburg, New York, 10962. Upon information and belief, Daikin America, Inc. is a subsidiary of Daikin Industries, Ltd., and sold intermediates to manufacturers for use in AFFF.

ii.  Defendant Daikin Industries, Ltd. is a Japanese limited company with its principal business offices located at Umeda Center Bldg., 2-4-12, Nakazaki-Nishi, Kita-ku, Osaka 530-8323, Japan. Upon information and belief, Daikin Industries, Ltd. sold intermediates to manufacturers for use in AFFF.

jj.  Defendant Solvay Specialty Polymers USA, LLC ("Solvay") is a Delaware corporation with its principal place of business located at 4500 McGinnis Ferry Road, Alpharetta, GA, 30005. Upon information and belief, this defendant manufactured fluorochemicals for use in the manufacture of Fluorosurfactant Products. Solvay is registered to do business in Florida.

kk. Defendant North America Fire Equipment Company, Inc. ("NAFECO") is an Alabama corporation with its principal place of business located at 2601 Beltline Road SW, Decatur, Alabama 35601.  Upon information and belief, NAFECO

distributed and/or sold AFFF throughout the United States, including in the State of Florida.

ll. Upon information and belief, Defendants John Doe 1-49 were designers, manufacturers, marketers, distributors, and/or sellers of Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

15.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

16.    When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendants, and the amount in damages exceeds the minimal jurisdictional limits of this Court.

18.    Venue is appropriate in this judicial district pursuant to this Court's Case Management Order No. 3 ("CMO 3").  Plaintiff states that but for CMO 3 permitting direct filing

in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Northern District of Florida. Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the Northern District of Florida as the "Home Venue" as this case may have originally been filed there.

19.    Venue is proper in the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff is a resident and citizen, a substantial part of the property that is the subject of this action is situated in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A.  THE CONTAMINANTS: PFOA & PFOS

20.    PFOA and PFOS are man-made chemicals within a class known as perfluoroalkyl acid ("PFAA").  PFAAs are part of the larger chemical family known as per- and polyfluoroalkyl substances ("PFAS").  PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent.  PFOA and PFOS contain eight carbon-fluorine bonds. For this reason, they are sometimes referred to as "C8."

21.    PFOA and PFOS are highly water soluble, which increases the rate at which they spread throughout the environment, contaminating soil, groundwater, and surface water.  Their mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[1]

---

[1] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 16; and Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA

22.     PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[2]

23.     PFOA and PFOS are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

24.     Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

25.     According to the United States Environmental Protection Agency ("EPA"), "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[4]

26.     EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOS."[5]

27.     EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated

Document Number: 822-R-16-004 (May 2016) at 16, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[2] See EPA Document Number: 822-R-16-005 (May 2016) at 18-20, 25-27; and EPA Document Number: 822-R-16-004 (May 2016) at 19-21, 26 28.
[3] See EPA Document Number: 822-R-16-005 (May 2016) at 55; and EPA Document Number: 822-R-16-004 (May 2016) at 55.
[4] See "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[5] See "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [PFOA/PFOS] were used for firefighting."[6]

### B. AQUEOUS FILM-FORMING FOAM

28.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

29.     The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

30.     PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

31.     All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization.  Telomerization produced fluorotelomers, including PFOA and/or chemical precursors to PFOA.

32.     AFFF can be made without PFOA, PFOS, or their precursor chemicals. Fluorine-free foams and short-chains foams do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

33.     AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion.

34.     When used as the Defendants intended and directed, Defendants' AFFF releases PFOA, PFOS, and/or their precursor chemicals into the environment.

---

[6] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

35.     Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

36.     The use of Defendants' Fluorosurfactant Products as directed and intended by the Defendants allowed PFOA, PFOS, and/or their precursor chemicals to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface water, soil, sediment, and groundwater, as well as causing other extensive and ongoing damage to Plaintiff's Property.

37.     Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to Plaintiff's Property.

**C. DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS**

38.     On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

39.     Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

40.     In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years.  Based on that data, 3M estimated that it could take a person up

to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[7]

41.     By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

42.     In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

43.     Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

44.     Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

45.     From 1951 through present, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks, such as Forafac 1157 N, for use in the manufacture of AFFF products.

---

[7] See Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[8] See Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[9] See Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

46.     Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and contaminated Plaintiff's Property.

47.     DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

48.     By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History."[11] The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[12]

49.     By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[13] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced

---

[10] *See, e.g.,* Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003). The *Wilmington News Journal* is published in Wilmington, Ohio.
[11] $16.5 million.
[12] U.S.Envtl. Prot. Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed on January 30, 2018).
[13] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.

hypertension and preeclampsia.[14]  By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

50.      In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly-traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

51.      Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products; (2) issued instructions on how Fluorosurfactant Products should be used and disposed of (namely, by washing the foam into the soil or wastewater system), thus improperly permitting PFOA, PFOS, and/or their precursor chemicals to contaminate the surface water, soil, sediment, and groundwater in and around the Plaintiff's Property; (3) failed to recall and/or warn the users of Fluorosurfactant Products, negligently designed products containing and/or degrading into PFOA and/or PFOS, of the dangers of surface water, soil, sediment, and groundwater contamination as a result of standard use and disposal of these Fluorosurfactant Products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products, notwithstanding the fact that Defendants knew the identity of the purchasers of the Fluorosurfactant Products.

52.      As a direct result of Defendants' actions and/or inactions alleged in this Complaint, Plaintiff's Property has been and will continue to be contaminated with PFAS, including PFOA and PFOS, creating an environmental hazard, unless such contamination is remediated. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff must assess,

---

[14] *See* The C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed on January 28, 2018).

evaluate, investigate, treat, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination on its Property at significant expenses, loss and damage.

53.    Defendants had a duty and breached their duty to evaluate and test such Fluorosurfactant Products adequately and thoroughly to determine their potential human health and environmental impacts before they sold such products. They also had a duty and breached their duty to minimize the environmental harm caused by Fluorosurfactant Products.

### D.  THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY

54.    PFOA and PFOS have been detected in varying amounts, at varying times in soil and water extracted from Plaintiff's Property.  PFOA and PFOS have been detected and/or are present in certain of areas of Plaintiff's Property.  It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS in its soil, sediment, surface water, groundwater, or elsewhere on its property requires investigation, remediation and monitoring. With that said, PFOA and PFOS have been detected in and on Plaintiff's Property. The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in and on Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

55.    Upon information and belief, the invasion of Plaintiff's Property with PFOA and PFOS is recurring, resulting in new harm to Plaintiff on each occasion.

56.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, Plaintiff and Plaintiff's Property. Plaintiff's interests in protecting its Property constitute a reason for seeking damages sufficient to restore such Property to its pre-contamination condition, in addition to the other damages sought herein.

**FIRST CAUSE OF ACTION**

STRICT LIABILITY – DEFECTIVE DESIGN

57.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

58.    Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling Fluorosurfactant Products.

59.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products for use in controlling and extinguishing aviation, marine, fuel, and other flammable liquid fuel fires.

60.    Defendants represented, asserted, claimed, and warranted that their Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

61.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

62.    Defendants' Fluorosurfactant Products used on Plaintiff's Property were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

63.    Defendants knew, or should have known, that use of Defendants' Fluorosurfactant Products in their intended manner would result in the spillage, discharge, disposal, or release of PFOA, PFOS, and/or their precursor chemicals into the surface water, soil, sediment and groundwater.

64.    Defendants' Fluorosurfactant Products used on Plaintiff's Property were defective in design and unreasonably dangerous because, among other things: (a) PFOA and PFOS cause soil and water contamination, even when used in their foreseeable and intended manner; (b) even

at extremely low levels, PFOA and PFOS render drinking water unfit for consumption; (c) PFOA and PFOS pose significant threats to public health; and (d) PFOA and PFOS create real and potential damage to the environment.

65.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and diminished property value.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

66.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

67.     As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA and PFOS.

68.     Defendants knew that Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to human health and the environment.

69.     Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, purchasers, downstream handlers, and/or the general public with warnings about the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the environment.

70.     Fluorosurfactant Products purchased or otherwise acquired from Defendants were used, discharged, and/or released into or onto Plaintiff's Property.

71.     Defendants' Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

72.     Defendants' Fluorosurfactant Products used on Plaintiff's Property were defective in design and unreasonably dangerous for the reasons set forth above.

73.     Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of Defendants' Fluorosurfactant Products on Plaintiff's Property, including contamination of Plaintiff's Property with PFOA and/or PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

74.     In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their Fluorosurfactant Products.

75.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and diminished property value.

### **THIRD CAUSE OF ACTION**

NUISANCE

76.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

77.     Defendants designed, manufactured, distributed, marketed, and/or sold their Fluorosurfactant Products in a manner that created, or participated in creating, a nuisance that unreasonably endangers or injures the property, health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

78.    Defendants, by their acts and omissions set forth above have, among other things, knowingly unleashed long-lasting and ongoing PFOA and/or PFOS contamination and threat of PFOA and/or PFOS contamination on Plaintiff's Property.

79.    Actual and threatened PFOA and/or PFOS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of its Property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

80.    Defendants' conduct has also injured, and continues to injure, the property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of persons in Pensacola, Florida who utilize, live, and/or work at Plaintiff's Property.

81.    Defendants knew or, in the exercise of reasonable care, should have known that the use and introduction of Fluorosurfactant Products into the environment would and has continuously, unreasonably and seriously endangered and interfered with the ordinary safety, use, benefit, and enjoyment of Plaintiff's Property.

82.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and diminished property value.

## FOURTH CAUSE OF ACTION

### TRESPASS

83.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

84.    Plaintiff is the owner and/or actual possessor of the Airport property and other relevant structures located thereon. Defendants knew, or in the exercise of reasonable care

should have known, that PFOA and/or PFOS easily migrate through water sources and soil, thereby contaminating the soil, sediment, surface water, and groundwater, including the property and other rights of Plaintiff.

85.     Defendants failed to properly warn against the use of Fluorosurfactant Products such that they proximately caused and continue to cause PFOA and/or PFOS to invade and contaminate Plaintiff's Property, including but not limited to its soil, sediment, surface water, groundwater, and other structures located thereon.

86.     The invasion and contamination of Plaintiff's Property has varied over time and has not yet ceased.  PFOA and/or PFOS continue to migrate onto, under and around Plaintiff's Property, thereby diminishing the value and impairing Plaintiff's use and enjoyment of its Property.  The contamination is reasonably abatable.

87.     Plaintiff has not consented to, and does not consent to, this contamination.

88.     Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

89.     As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and diminished property value.

## **FIFTH CAUSE OF ACTION**

### NEGLIGENCE

90.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

91.     As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of Fluorosurfactant Products, Defendants owed a duty to Plaintiff, as

well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' Fluorosurfactant Products.

92.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOA and/or PFOS to enter and contaminate Plaintiff's Property; (c) failed to recall and/or warn the users of Fluorosurfactant Products of the dangers of soil and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their Fluorosurfactant Products.

93.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and diminished property value.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE *PER SE*

94.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

95.    Plaintiff alleges that Defendants negligently, carelessly and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled and/or sold Fluorosurfactant Products and/or negligently, carelessly and recklessly recommended application and disposal techniques for its Fluorosurfactant Products that they directly and proximately caused contamination of Plaintiff's Property, including its water sources, in violation of Florida Statute § 403.161(1) (public health), which sets a standard of care or conduct to protect Plaintiff and all persons or property within its jurisdiction, as well as the environment, from the type of improper activities engaged in by Defendants.

96.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, and will continue to incur, costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, and diminished property value.

## SEVENTH CAUSE OF ACTION

### FRAUDULENT TRANSFER (DUPONT AND CHEMOURS)

97.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

98.    Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

99.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

100.    Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the

transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

101.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

102.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgments for all of the liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

103.    Upon information and belief, DuPont has (a) acted with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

104.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of parties, such as the Plaintiff, that have been damaged as a result of DuPont's actions as described in this Complaint.

105.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

106.    Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severably liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

107.    Plaintiff further reserves such other rights and remedies that may be available to it as may be necessary to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this Complaint.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages according to proof including, but not limited to:

    a. costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property;

    b. costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property;

    c. costs and expenses associated with and related to the removal and disposal of the contamination; and

    d. costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property.

2. Diminished property value;

3. Consequential damages;

4. Punitive damages;

5. Costs, disbursements and reasonable attorneys' fees, incurred as a consequence of Plaintiff having to secure counsel in order to obtain the relief sought herein;

6. Pre-judgment and post-judgment interest; and

7. Any other and further relief as this Court deems just, proper and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial.

Dated: April 17, 2020

_____
Scott Summy (TX Bar 19507500)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Fax: (214) 520-1181
Cary McDougal (TX Bar 13569600)
Carla Burke Pickrel (TX Bar 24012490)
Cristina Sanchez (TX Bar 24041856)

**COSSICH, SUMICH, PARSIOLA**
**& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000
Fax: (504) 394-9110
Philip F. Cossich, Jr. (LA Bar 1788)
Darren Sumich (LA Bar 23321)
David A. Parsiola (LA Bar 21005)
Brandon J. Taylor (LA Bar 27662)
Christina Cossich (LA Bar 32407)
Andrew J. Cvitanovic (LA Bar 34500)
Luana N. Smith (LA Bar 35534)

**CITY OF PENSACOLA**
Susan A. Woolf, City Attorney
Florida Bar Number 0013323
William D. Wells, Deputy City Attorney
Florida Bar Number 298506
City of Pensacola
222 West Main Street
Pensacola, Florida 32502

*Attorneys for Plaintiff*